**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| DEBRA K. GLEASON, § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:05-CV-553-A |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Debra K. Gleason brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Gleason filed concurrent applications for disability insurance and SSI benefits on May 15, 2001, alleging she has been disabled since July 11, 1999. (Tr. 47, 235). Her insured status for purposes of disability benefits under Title II of the Social Security Act expired September 30, 2001. (Tr. 34).

After the Social Security Administration denied her applications for benefits both initially and on reconsideration, Gleason requested a hearing before an administrative law judge (the "ALJ"). ALJ Randolph D. Mason held a hearing in January 2003 and issued an unfavorable decision on April 21, 2003, (Tr. 248-57), but the Appeals Council subsequently vacated the decision and remanded the case for additional development. (Tr. 262-63). The ALJ held a second hearing on August 26, 2004 in Fort Worth, Texas. (Tr. 348-63). On September 24, 2004, the ALJ issued a decision that Gleason was not disabled and was not entitled to disability or SSI benefits because her residual functional capacity did not preclude her from performing her past relevant work. (Tr. 25-31). The Appeals Council denied Gleason's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 6).

B.      STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be currently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to

2

work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible

mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUES

    1.   Whether the ALJ gave adequate consideration to the opinions offered by treating and examining sources;

    2.   Whether the ALJ erred in assessing Gleason's credibility; and

    3.   Whether substantial evidence supports the ALJ's determination that Gleason could perform her past relevant work.

D.   ADMINISTRATIVE RECORD

    1.   Treatment History

The medical records provide the following information about Gleason's impairments:

Gleason had surgery on her left knee in August 1993, (Tr. 191), but continued to work until she was involved in a motor vehicle accident on July 11, 1999 that injured her neck, low back, right knee, and right ankle. (Tr. 130, 169). Orthopedic surgeon Joseph Daniels, D.O., performed arthroscopic surgery on Gleason's right knee in November 1999. (Tr. 159).

Gleason saw orthopedic surgeon Stephen Wilson, M.D., on April 20, 2001 for evaluation of her persistent bilateral knee pain. (Tr. 87). She complained that knee surgery in 1999 had not been beneficial, and she felt her symptoms were worse after the surgery. Gleason complained of swelling

in both knees and pain with weight-bearing. The pain also bothered her at night, and walking for more than five to ten minutes produced a marked increase in her pain level. (Tr. 88).

On examination, Wilson noted mild effusion in both knees, with pain on palpation. Gleason exhibited full range of motion in both knees. (Tr. 88). Wilson noted that recent magnetic resonance imaging (MRI) studies showed problems in the left anterior cruciate ligament, with considerable arthrosis and osteophytic changes.[1] Wilson recommended arthroscopic evaluation of both knees, braces, exercise, and injections. (Tr. 89).

Internist Lee Etier examined Gleason in September 2001. (Tr. 90). On examination, Gleason exhibited reduced range of motion in her neck and low back. X-rays showed minimal degenerative disc disease in Gleason's lumbar spine. Gleason also had crepitation in both knees with mild swelling, but Etier found that Gleason's range-of-motion in both knees was fairly well preserved. (Tr. 91-92). Eiter diagnosed tri-compartmental degenerative joint disease of both knees, moderate obesity, and cervical and paraspinal pain. Eiter opined that Gleason would have difficulty with bending, lifting, ambulation, carrying, and stair-climbing. (Tr. 92).

On February 20, 2003, physician Vibha Patel, M.D., completed a medical source statement on behalf of Gleason's treating physician Scott Ferree, D.O.[2] (Tr. 288). The medical source statement limits Gleason to sitting, standing, or walking for no more that thirty minutes at a time, for less than one hour total per day. (Tr. 288). Patel also advised that Gleason would require up to four hours rest per day due to fatigue, and approximately thirty minutes of rest each day for purposes

---

[1] Arthrosis or arthropathy is a general term for joint disease. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 152-53 (29th ed. 2000). Osteophytes refer to bony excrescence or outgrowth. *Id*. at 1290.

[2] The treatment records indicate that Patel subsequently became Gleason's primary care physician.

5

of pain management. Patel also found that Gleason needed to elevate both legs to a height of waist level while sitting. Gleason was limited to lifting six to ten pounds occasionally, and could occasionally balance, crawl, bend, stoop, kneel or climb. (Tr. 289). Patel premised the foregoing restrictions on diagnoses of degenerative disc and joint disease, and opined that these restrictions had existed since at least September 15, 1999. (Tr. 289-90).

During later visits with her treating physicians, Gleason reported that her left knee cap popped out of place on a regular basis, and her knee pain persisted. Gleason had additional surgery on her left knee in March 2004 to correct chronic dislocation of the patella. (Tr. 335, 342-46).

2.      Administrative Hearing

Gleason testified that she was born on December 27, 1954. She completed high school and a year and a half of college. (Tr. 350). She testified that she had problems with both knees, and had also strained her neck and back in a car accident in 1999. (Tr. 351). Gleason testified that she was in constant pain, and standing or walking aggravated her condition. She testified that she used pain medications and also elevated her legs to a height of hip level three or four times a day to alleviate the swelling in her knees. (Tr. 353). Gleason estimated that she could walk for about fifteen minutes continuously. (Tr. 359).

Gleason testified that knee surgery had failed to improve her symptoms. Her knees made frequent popping sounds, as often as ten times a day, and two or three times a month she had to manipulate her knee back into the socket. (Tr. 358). Gleason also complained of muscle pain in her back and neck, which limited her range of motion and disrupted her sleep. Gleason testified that her pain medications made her drowsy and upset her stomach. (Tr. 360-61).

6

  3.  Work History

Gleason completed a work history form in support of her disability claim and reported that she had worked as a cashier, an insurance claims processor, and a billing clerk for a utility company. (Tr. 64). Vocational expert Barbara Dunlap testified at the administrative hearing in 2003 that work as a cashier required light exertion, while the jobs of claims processor and billing clerk were considered sedentary positions. (Tr. 380-81). Dunlap also testified that work as a claims processor or billing clerk would provide up to frequent opportunities throughout the day to stand and move around. (Tr. 381). No vocational expert was consulted during the second hearing in 2004.

  4.  ALJ Decision

The ALJ found that Gleason had not engaged in substantial gainful activity since her alleged onset date, and also found that Gleason's cervical and lumbar degenerative disc disease and degenerative joint disease in her knees constituted severe impairments. (Tr. 30). The ALJ found that Gleason had no impairment or combination of impairments meeting or equaling the criteria of any listed impairment, but instead, she retained the residual functional capacity for sedentary work activity that provided frequent opportunities to sit or stand. (Tr. 31). Finding that Gleason's residual functional capacity was compatible with her past relevant work as a claims processor and billing clerk, the ALJ concluded that Gleason was not disabled or entitled to disability insurance or SSI payments. (Tr. 31).

D. DISCUSSION

Gleason contends that the ALJ did not properly evaluate the opinions offered by treating and examining sources with respect to her work-related limitations. Namely, Gleason complains of the

7

ALJ's failure to mention either Etier's consultative examination report or the medical source statement that Patel completed in February 2003.

Adjudicators must carefully consider every medical opinion received. SOCIAL SECURITY RULING 96-5p. When a treating physician provides a medical opinion that is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record, it is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2). Even if a treating source opinion is not entitled to controlling weight under the regulations, that does not mean the opinion should be completely rejected. In many cases, the opinion may be entitled to the greatest weight and should be adopted even if it does not satisfy the test for controlling weight. SOCIAL SECURITY RULING 96-2p.

The ALJ can decrease the weight assigned to a medical opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). But before rejecting a treating source opinion, the ALJ must consider the factors outlined in the administrative regulations, which include: the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-5p, 96-2p. The determination of disability, however, always remains the province of the ALJ. *See id.* §§ 404.1527(e), 416.927(e).

Here, the ALJ did not comply with the regulations and rulings or the Appeals Council's

directive that ALJ further develop the record with respect to the medical source opinions.[3] (Tr. 263). The ALJ does not mention Patel's opinion or Etier's evaluation and opinion, and provides no discussion of the value of either opinion as compared to the other evidence of record. Moreover, Gleason was prejudiced as a result of the ALJ's omission because Patel's opinion, if adopted, would place greater limitation on her physical capacity for work-related activities then the ALJ found and would preclude full-time work. Etier likewise reported that Gleason would have difficulty with lifting, ambulation, carrying, and stair-climbing, although Etier did not identify the degree of limitation that might be expected in these activities.

The Commissioner asserts that the ALJ was not required to consider Patel's opinion because it was conclusory, but a review of Patel's opinion does not demonstrate that it is a conclusory statement of disability. Alternatively, the Commissioner asserts that the ALJ properly gave no weight to Patel's medical opinions and proceeds to explain why those opinions are not supported by the evidence as a whole. None of these reasons are found in the ALJ's written decision, and in this circuit, the ALJ's determination must stand or fall on the reasons set forth in the ALJ's decision as adopted by the Appeals Council. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The administrative decision should be reversed and remanded so that the ALJ can fulfill his responsibility to weigh all medical source opinions in the record.[4]

---

[3] The Appeals Council directed the ALJ to obtain updated evidence from treating sources; further evaluate Gleason's subjective complaints; futher consider Gleason's residual functional capacity, and in so doing, evaluate treating source opinions in accordance with the regulations and rulings; and obtain supplemental vocational evidence if warranted. (Tr. 263).

[4] Gleason also contends that substantial evidence does not support the ALJ's assessment of her credibility or the determination that she could perform her past relevant work either as she performed it or as the job is generally performed in the national economy. Because the credibility assessment may be affected by the value that the ALJ places on the treating and examining source opinions on remand, it would be premature to address

9

RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until July 31, 2006. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

---

Gleason's complaints about the credibility assessment at this juncture.
   As for Gleason's ability to return to her past relevant work, the ALJ did not utilize the services of a vocational expert during the second hearing, but the vocational expert who testified at Gleason's first hearing in 2003 stated that the jobs of claims processor or billing clerk could allow for frequent opportunities to sit or stand. (Tr. 381). Nonetheless, on remand, he ALJ is free to revise his assessment of Gleason's residual functional capacity and reconsider Gleason's ability to perform her past relevant work or any other work.

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until July 31, 2006 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JULY 6, 2006.


    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE